HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE
6 St. Paul Street, Suite 1501
Baltimore, Maryland 21202-1608
(410) 767-8200

**CLAIM FORM**       HCA NO.: _____

RECEIVED
APR 08 2014
HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE

**CLAIMANT(S)**

CHRISTY T. O'CONNELL
Name

3572 Bagley Drive
Street Address

Mt. Pleasant, SC  29466
City, State, Zip Code

_____
Name

_____
Street Address

_____
City, State, Zip Code

_____
Name

_____
Street Address

_____
City, State, Zip Code

**HEALTH CARE PROVIDER(S)**

ASSOCIATES IN OB/GYN CARE, L.L.C.
D/B/A AMERICAN WOMEN'S SERVICES AND
Name AMERICAN MEDICAL ASSOCIATES

9801 Georgia Avenue, Suite 338
Street Address 9801

Silver Spring, MD  20902
City, State, Zip Code

AMERICAN MEDICAL ASSOCIATES, P.C.
D/B/A/ AMERICAN WOMEN'S SERVICES AND
Name ASSOCIATES IN OB/GYN CARE

2200 Hamilton Street
Street Address

Allentown, PA  18104
City, State, Zip Code

ROSE HEALTH SERVICES COMPANY
Name D/B/A AMERICAN WOMEN'S SERVICES

401 East Elm Street, Suite 200
Street Address

Conshohocken, PA  19428
City, State, Zip Code

(1) This claim is filed pursuant to Title 3, Subtitle 2A of the Courts Article. The damages claimed are in excess of $30,000.00, and the appropriate venue is: Baltimore City 6irUuSt District Court for Maryland

(2) The basis of the claim is described on the page(s) attached hereto.

(3) The resolution of the claim will involve particular expertise in this area of specialty   (030) Obstetrics & Gynecology
(PLEASE SEE REVERSE SIDE FOR AREAS OF CONCENTRATION)       General

**WARNING:** Each Claimant has been advised that he/she may be held civilly liable for part or all the Costs resulting from the filing of this claim, whether it is won or lost; this would be an individual and personal responsibility.

**ATTORNEY FOR CLAIMANT(S)**

Signature Emily C. Malarkey, Esquire

300 West Pratt Street, Suite 450
Street Address

Baltimore, MD  21201
City, State, Zip Code

410-539-6633
Telephone Number

**CLAIMANT(S)**

Signature for each Claimant CHRISTY O'CONNELL
(permission)

**EXHIBIT 1**

HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE
6 St. Paul Street, Suite 1501
Baltimore, Maryland 21202-1608
(410) 767-8200

**CLAIM FORM**     HCA NO.: _____

| CLAIMANT(S) | HEALTH CARE PROVIDER(S) |
|---|---|
| _____ Name | IRIS DOMINY, M.D. Name |
| _____ Street Address | 9801 Georgia Avenue, Suite 338 Street Address |
| _____ City, State, Zip Code | Silver SPring, MD 20902 City, State, Zip Code |
| _____ Name | _____ Name |
| _____ Street Address | _____ Street Address |
| _____ City, State, Zip Code | _____ City, State, Zip Code |
| _____ Name | _____ Name |
| _____ Street Address | _____ Street Address |
| _____ City, State, Zip Code | _____ City, State, Zip Code |

(1) This claim is filed pursuant to Title 3, Subtitle 2A of the Courts Article. The damages claimed are in excess of $30,000.00, and the appropriate venue is: _____.

(2) The basis of the claim is described on the page(s) attached hereto.

(3) The resolution of the claim will involve particular expertise in this area of specialty _____.
(PLEASE SEE REVERSE SIDE FOR AREAS OF CONCENTRATION)

**WARNING:** Each Claimant has been advised that he/she may be held civilly liable for part or all the Costs resulting from the filing of this claim, whether it is won or lost; this would be an individual and personal responsibility.

| **ATTORNEY FOR CLAIMANT(S)** | **CLAIMANT(S)** |
|---|---|
| _____ Signature | _____ Signature for each Claimant |
| _____ Street Address | _____ |
| _____ City, State, Zip Code | _____ |
| _____ Telephone Number | |



| | |
|---|---|
| CHRISTY T. O'CONNELL,<br>3572 Bagley Drive<br>Mt. Pleasant, South Carolina 29466 | * <br> * |
| Claimant | *  IN THE HEALTH CARE |
| v. | *  ALTERNATIVE DISPUTE |
| ASSOCIATES IN OB/GYN CARE, LLC<br>d/b/a AMERICAN WOMEN'S SERVICES and<br>AMERICAN MEDICAL ASSOCIATES<br>9801 Georgia Avenue, Suite 338<br>Silver Spring, MD 20902 | *  RESOLUTION OFFICE<br>*  OF MARYLAND<br>* |
| And | *  Claim No: _____ |
| AMERICAN MEDICAL ASSOCIATES, P.C.<br>d/b/a AMERICAN WOMEN'S SERVICES and<br>ASSOCIATES IN OB/GYN CARE<br>2200 Hamilton Street<br>Allentown, Pennsylvania 18104 | *<br>*<br>* |
| And | * |
| ROSE HEALTH SERVICES COMPANY<br>d/b/a AMERICAN WOMEN'S SERVICES<br>401 East Elm Street, Suite 200<br>Conshohocken, Pennsylvania 19428 | *<br>*<br>* |
| And | * |
| IRIS DOMINY, M.D.<br>9801 Georgia Avenue, Suite 338<br>Silver Spring, MD 20902 | *<br>* |
| Health Care Providers | |

\* \* \* \* \* \* \* \* \* \* \* \*

### STATEMENT OF CLAIM

Claimant, Christy T. O'Connell, by and through her attorneys, Emily C. Malarkey and Salsbury, Clements, Bekman, Marder & Adkins LLC, sues the Health Care Providers, Associates in Ob/Gyn Care, LLC d/b/a American Women's Services and American Medical

1

Associates; American Medical Associates, P.C., d/b/a American Women's Services and Associates in Ob/Gyn Care; Rose Health Services Company, d/b/a American Women's Services; and Iris Dominy, M.D., and states as follows.

## Parties, Jurisdiction and Venue

1. The Claimant Christy T. O'Connell is a resident of South Carolina.

2. The Health Care Provider Associates in Ob/Gyn Care, LLC d/b/a American Women's Services and American Medical Associates is a Maryland corporation that conducts business in Baltimore City, Prince George's County, Montgomery County, Frederick County, and elsewhere in the State of Maryland.

3. The Health Care Provider American Medical Associates, P.C., d/b/a American Women's Services and Associates in Ob/Gyn Care is a Pennsylvania corporation that formerly was incorporated in the State of Maryland, and which conducts business in the State of Maryland.

4. The Health Care Provider Rose Health Services Company, d/b/a American Women's Services, is a Pennsylvania corporation that conducts business in the State of Maryland.

5. The Health Care Provider Iris Dominy, M.D., is a physician licensed by the State of Maryland. She resides in Montgomery County, Maryland, and, upon information and belief, practices medicine in Montgomery County, Prince George's County, Frederick County, and Baltimore City, Maryland.

6. The amount of this claim exceeds thirty thousand dollars ($30,000).

7. Venue is proper in Baltimore City and the U.S. District Court for the District of Maryland, and may be proper elsewhere.

2

## Facts Common To All Counts

8.  At all relevant times, the Health Care Providers Associates in Ob/Gyn Care, LLC; American Medical Associates, P.C.; and Rose Health Services Company, all of whom conducted business under the trade name "American Women's Services," (and hereinafter referred to collectively as "American Women's Services") were and are medical facilities offering medical and other related services to the general public, including but not limited to abortion services, and in such capacity, their agents, servants, employees and/or apparent agents held themselves out to the Claimant and to the general public as practicing within ordinary standards of medical care, particularly those related to obstetrics and gynecology. At all times relevant, these health care providers owed a duty to the Claimant, and the general public, to exercise reasonable skill and care in selecting competent personnel, and to provide diagnostic and medical services and treatment in accordance with ordinary standards of care, particularly those related to obstetrics and gynecology.

9.  At all relevant times, the health care provider Iris Dominy, M.D. held herself out to the Claimant, and to the general public, as an experienced, competent and able physician and/or health care provider possessing or providing that degree of skill and knowledge that is ordinarily possessed by those who devote special study and attention to the practice of medicine, particularly obstetrics and gynecology, and as such, owed a duty to the Claimant to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of medicine, particularly obstetrics and gynecology.

3

10. At all relevant times, Iris Dominy, M.D., was an agent, servant, employee and/or apparent agent of Associates in Ob/Gyn Care, LLC; American Medical Associates, P.C.; Rose Health Services Company; and/or American Women's Services, and was acting in the scope of her employment and/or agency.

11. In late June of 2012, Christy O'Connell learned that she was pregnant. She presented to her primary care provider on July 16, 2012, where a blood pregnancy test and transvaginal ultrasound confirmed that she was 8 weeks and 2 days pregnant, with an estimated date of delivery of February 23, 2013.

12. Christy O'Connell made the difficult decision to terminate her pregnancy. On July 26, 2012, she presented to the offices of a practice commonly called "American Women's Services" in Frederick, Maryland to obtain a consultation for an abortion. She reported at this visit that she was currently taking a variety of prescription medications, including anti-depressants, migraine medication, blood pressure medication, asthma medication, and antacids.

13. At the appointment, Ms. O'Connell underwent a trans-abdominal ultrasound, which estimated her fetus to be approximately 7 weeks and 4 days old. This estimate was inaccurate and underestimated the fetus's gestational age because it was made utilizing gestational sac size rather than the more accurate crown-to-rump length.

14. Ms. O'Connell then consulted with Dr. Iris Dominy, and a plan was made to conduct a "medical" or non-surgical abortion, in which the patient takes medications designed to induce a spontaneous abortion. According to consent documents signed by Ms. O'Connell, this option is only viable for women who are 8 weeks pregnant or less.

4

15. The medications that were administered to Ms. O'Connell to achieve her abortion – misoprostol and methotrexate – are not FDA approved for termination of pregnancy. Methotrexate is typically used in chemotherapy for cancer patients. It was used to induce abortions before the FDA approved RU-486 (mifepristone), and can take up to eight weeks in order to successfully terminate a pregnancy.

16. Misoprostol is a drug that is commonly used to induce labor in pregnant patients, and under certain circumstances, can be used to perform a medical abortion in combination with mifepristone/RU-486. Ms. O'Connell was not given any mifepristone, and in fact, the materials she was provided by American Women's Services falsely state that mifepristone "is still not available in the United States."

17. Methotrexate and misoprostol are dangerous and powerful drugs. Not only do they have serious physical consequences to the mother who ingests them, but also they can cause serious and permanent harm to the fetus if the abortion is unsuccessful. Indeed, the consent form signed by Ms. O'Connell prior to undergoing her medical abortion states that the medications "are very damaging to the fetus" and "can cause severe birth defects."

18. It is asserted that American Women's Services prescribed methotrexate and misoprostol as therapy for medical abortions instead of other, FDA-approved regimens in order to cut costs and maximize profits. In fact, one pill of mifepristone costs approximately $95, whereas one dose of methotrexate costs between $5 and $25. (Ms. O'Connell was charged a flat fee of $310 for her medical abortion.)

19. Recognizing that the treatment regimen prescribed for Ms. O'Connell had the potential to be ineffective and to render severe harm to the fetus, American Women's Services required Ms. O'Connell to return to the clinic several weeks after taking the drugs

in order to confirm that she was no longer pregnant. She was advised that if the abortion was not successful, a surgical procedure would have to be performed to complete it. The consent form she signed states:

> About 8% of women using this method will not abort and MUST UNDERGO termination by the standard vacuum aspiration method. The drugs used in this termination are very damaging to the fetus, and if they fail to produce complete expulsion of the pregnancy, a minor surgical procedure will be performed. .... IT IS VERY IMPORTANT THAT YOU UNDERSTAND THAT ONCE METHOTREXATE HAS BEEN GIVEN, THE TERMINATION OF THE PREGNANCY MUST BE COMPLETED. THE METHOTREXATE CAN CAUSE SEVERE BIRTH DEFECTS.

20. On August 17, 2012, Ms. O'Connell returned to American Women's Services for her follow-up appointment. She indicated at that visit that she was still experiencing symptoms of pregnancy. A sonogram was performed, the report of which states: "Trans abdominal US no IUP," indicating that no intrauterine pregnancy was seen. The report is signed by an ultrasound technician and Dr. Dominy. Ms. O'Connell was advised that there would be no need to conduct any urine or blood pregnancy tests to confirm that she was no longer pregnant. She was only advised to follow up with her primary care provider in three months, and provided a prescription for oral contraceptives.

21. Following her abortion, which she believed to be successful, Ms. O'Connell engaged in other behavior she would not have engaged in if she were pregnant, such as drinking alcoholic beverages and taking prescription medications.

22. On October 5, 2012, Ms. O'Connell followed up with her primary care provider for her annual "well woman" exam. During the physical exam, her doctor discovered that she was in fact still pregnant, a fact that was confirmed by urine pregnancy test.

23. A stat ultrasound confirmed that Ms. O'Connell was still carrying a viable fetus, now more than 18 weeks' of gestational age.

24. Ms. O'Connell's health care providers immediately took measures to adjust her prescription medication regimen, counsel her about ways to stay healthy while pregnant, and provide care for her as a high-risk obstetrical patient. She saw her obstetrician almost weekly, and obtained multiple sonograms to monitor her baby's growth.

25. Unfortunately, Ms. O'Connell developed severe preeclampsia, or high blood pressure, a condition that can be extremely harmful and even fatal to the mother and her fetus. The only way to reverse preeclampsia is by delivering the baby.

26. At approximately 28 weeks' gestation, Ms. O'Connell's preeclampsia was so bad that she was admitted to the hospital, where it was determined that her baby would need to be delivered. Joseph O'Connell was born on December 19, 2012. He was more than 10 weeks premature.

27. Joseph O'Connell remained in the Neonatal Intensive Care Unit for almost two months. Upon discharge, he continued to be, and to this day continues to be, monitored by many medical specialists for multiple medical issues, including hearing loss, developmental delays, heart defects, and other problems. Many of these medical issues relate to Joseph's severe prematurity.

28. It is yet unknown what effects the dangerous and harmful drugs prescribed to Christy O'Connell by American Women's Services had on Joseph O'Connell, and will continue to have for the rest of his life.

29. In the summer of 2013, the State of Maryland shut down three of the four American Women's Services clinics located in this State, citing reasons that included outdated equipment and poorly qualified or trained staff, including sonographers.

### Count I

30. Claimant adopts and incorporates paragraphs 1 through 29 as if fully set forth herein.

31. The Health Care Provider American Women's Services, by and through its agents, servants, employees and/or apparent agents, including but not limited to Iris Dominy, M.D. and ultrasound technicians, were negligent and careless in the following manners:

   a. By inaccurately estimating the fetal age on July 26, 2012;

   b. By failing to prescribe an appropriate and effective regimen of medications for the performance of a medical abortion;

   c. By failing to recognize the apparent and obvious presence of an ongoing uterine pregnancy of over 12 weeks' gestation on sonogram on August 17, 2012;

   d. By failing to implement appropriate follow-up care for Ms. O'Connell, including but not limited to urine and/or blood pregnancy testing and/or evaluations after August 17, 2012;

   e. By negligently depriving Christy O'Connell of the ability to make decisions about her body and her life,

   f. And in other ways.

8

32. As a result of the negligence of the Health Care Providers, Christy O'Connell has been caused to suffer physical injury, severe mental anguish, and other emotional pain and suffering, which is continuing in nature. She has also incurred, and will in the future continue to incur, substantial expenses related to the care of Joseph O'Connell, including medical and related expenses well above and beyond those incurred by a normal, healthy child.

WHEREFORE, Claimant, Christy O'Connell, claims damages in an amount to be determined by a panel of the Health Care Alternative Dispute Resolution Office of Maryland.

### Count II

33. Claimant adopts and incorporates paragraphs 1 through 32 as if fully set forth herein.

34. The Health Care Provider American Women's Services, by and through its agents, servants, employees and/or apparent agents, including but not limited to Iris Dominy, M.D., had a legal duty and obligation to obtain adequate informed consent, including to accurately inform Christy O'Connell regarding the legal options for abortion available to her, and the material risks, benefits, and alternatives of those options.

35. The Health Care Providers were negligent and careless in that they failed to obtain adequate and valid informed consent from Christy O'Connell in the following ways:

    a. By falsely informing her that mifepristone "is still not available in the United States;"

    b. By failing to offer her medical abortion with mifepristone;

9

c. By failing to refer her to a different clinic that could provide medical abortion using mifepristone;

d. By failing to inform her that the combination of misoprostol and methotrexate is not as effective in inducing abortion as mifepristone, especially in a pregnancy greater than 9 weeks;

e. By failing to inform her that the combination of misoprostol and methotrexate can take up to eight weeks to successfully terminate a pregnancy;

a. And in other ways.

36. As a result of the negligence of the Health Care Providers in failing to provide adequate and valid informed consent, Christy O'Connell has been caused to suffer physical injury, severe mental anguish, and other emotional pain and suffering, which is continuing in nature. She has also incurred, and will in the future continue to incur, substantial expenses related to the care of Joseph O'Connell, including medical and related expenses above and beyond those incurred by a normal, healthy child.

WHEREFORE, Claimant, Christy O'Connell, claims damages in an amount to be determined by a panel of the Health Care Alternative Dispute Resolution Office of Maryland.

_____
EMILY C. MALARKEY
SALSBURY, CLEMENTS, BEKMAN
 MARDER & ADKINS, L.L.C.
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633
*Counsel for Claimant*