# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CHRISTY T. O'CONNELL,                *

                                     *

v.                                   
                                     *     Civil Action No. CCB-14-1339

AMERICAN MEDICAL ASSOCIATES, *et al.* *

                                     *

***

## MEMORANDUM OPINION

This is a wrongful birth action. The undisputed facts are tragic. Ms. O'Connell sought, and ostensibly received, a first-term medical abortion at a clinic in Frederick, Maryland. She was informed by clinic personnel that the abortion had been successful. But then, months later, during a visit with her primary care provider, she learned that she was still pregnant. Soon thereafter, Ms. O'Connell developed preeclampsia and gave birth 10 weeks premature to a baby, who has since suffered a host of medical and developmental problems. Ms. O'Connell filed this medical malpractice suit seeking damages from four doctors allegedly involved or vicariously liable, and American Medical Associates P.C., ("American")—a corporation she contends does business as a variety of other nominal entities, one of which is a clinic called Associates in OB/GYN Care, LLC, ("Associates"), where she sought the abortion. She later resolved her claims with Dr. Dominy, the physician who oversaw her treatment at the clinic. (*See* ECF No. 80). But her claims against three other doctors: Steven C. Brigham, Vikram H. Kaji, and Mansour G. Panah remained. Dr. Panah is deceased and his estate has not been substituted as a

party.[1] The plaintiff does not oppose Dr. Kaji's motion for summary judgment, (ECF No. 114 at p. 13 n.8), and it will therefore be granted. Dr. Brigham and American's motion for summary judgment, by contrast, is contested. Because there is a genuine dispute of material fact as to whether the defendants owned or controlled the Frederick clinic—and as to the relationship between the defendants and the clinic personnel—the defendants' motion for summary judgment will be denied.

## BACKGROUND

What happened to Christy O'Connell on July 26, 2012, is not in dispute.[2] (*See* Defs.' Mot. Summ. J., ECF No. 109-1 at pp. 8-15.) Having learned she was pregnant the month prior, she appeared at a clinic in Frederick, Maryland, known as American Women Services ("AWS") for an abortion consultation. (Am. Compl., ECF No. 45 at ¶¶ 21-22.) There, an office manager performed and interpreted an obstetric ultrasound, and underestimated the fetus's gestational age. (Am. Compl., ECF No. 45 at ¶ 24.) Ms. O'Connell consulted with Dr. Iris Dominy, and decided, because the gestational age estimate was less than eight weeks, to have a medical (non-surgical) abortion. (Am. Compl., ECF No. 45 at ¶ 25.) (Ten days earlier, Ms. O'Connell's primary care doctor had estimated the gestational age to be beyond eight weeks. (Am. Compl., ECF No. 45 at ¶ 20.).) At the clinic, Ms. O'Connell was prescribed misoprostol and methotrexate to achieve the abortion, neither of which are FDA-approved for that purpose and both of which are known to cause birth defects. (Am. Compl., ECF No. 45 at ¶¶ 26-28.) She was never given mifepristone/RU-486, or any FDA-approved medical abortion regimen. (Am. Compl., ECF No.

---

[1] Dr. Panah's current status in this case is unclear. Default judgment was entered against all the defendants on August 5, 2016, and Dr. Panah was not among the defendants who successfully moved to vacate the default judgment.
[2] Facts not disputed or immaterial to the summary judgment inquiry are taken from the Complaint.

2

45 at ¶ 27.) On August 17, 2012, Ms. O'Connell returned to AWS, where the office manager performed another sonogram and, with Dr. Dominy, confirmed that the abortion had been successful. (Am. Compl., ECF No. 45 at ¶ 31.) Ms. O'Connell went on with her life as if she were not pregnant; for example, she took oral contraceptives and drank alcohol. (Am. Compl., ECF No. 45 at ¶¶ 32-33.) But then, on October 5, 2012, Ms. O'Connell discovered at her annual physical exam that, in fact, she was still pregnant. (Am. Compl., ECF No. 45 at ¶ 33.) She developed preemclaspia in December, requiring that doctors induce labor. (Am. Compl., ECF No. 45 at ¶ 36.) Joseph O'Connell was born on December 19, 2012, and has since suffered numerous medical and developmental complications. (Am. Compl., ECF No. 45 at ¶ 238-40.)

Various business entities are implicated in the plaintiff's complaint. Their precise relationship to one another—and to Dr. Steven Brigham, M.D.—goes to the heart of the summary judgment dispute. Associates in OB/GYN Care, LLC ("Associates") is a registered corporation that operated four abortion clinics in Maryland. (*See* ECF No. 114, Ex. 12.) This is where the plaintiff attempted to procure an abortion, and its ownership is the acute factual issue in question. Its license was suspended in 2013 because a Maryland Department of Health and Mental Hygiene investigation found an unwritten policy by which staff administered medical abortions without physician oversight. (*See* ECF No. 114, Ex. 9A.) American Medical Associates, P.C. ("American") is a Pennsylvania corporation owned and operated by Steven Brigham. (*See* ECF No. 114, Ex. 10; Brigham Aff., ECF No. 114, Ex. 11 at ¶ 9.) As laid out below, Brigham and American argue that their relationship with the other defendants in this case is merely contractual—but it is undisputed that Brigham controls American. (*See* Defs.' Mot. Summ. J., ECF No. 109-1 at pp. 8-15.) American Women's Services ("AWS") is not a registered corporation but is alleged to be the trade name Dr. Brigham uses for the abortion clinics that he

owns or operates. (ECF No. 114 at p. 2.) The Associates branch in Frederick, MD, where Ms. O'Connell sought care, used the AWS tradename. (*See* ECF No. 114, Ex. 16.)

The procedural run-up to the present motion is straightforward. Ms. O'Connell filed a medical malpractice action against American, Associates, other allegedly affiliated business entities, and Dr. Dominy on April 21, 2014. (ECF No. 1.) In August 2015, she filed a separate lawsuit against Steven Brigham and Vikram H. Kaji arising out of the same nucleus of operative facts, which subsequently was consolidated with the case against American. (ECF No. 49.) Ms. O'Connell brought a third case, this time against Dr. Mansour G. Panah, the medical director at Associates, which also was consolidated with the 2014 case. (ECF No. 71.) She resolved her claims against Dr. Dominy. (ECF No. 80). None of the other defendants answered, and thereafter a default judgment was granted against the remaining defendants for $6,500,000. (ECF No. 76; ECF No. 77.) Defendants American, Kaji, and Brigham successfully moved to vacate the default judgment on improper service grounds. (ECF No. 99.) Discovery ensued. They now move for summary judgment. (ECF No. 109.) The plaintiff argues that summary judgment should be denied as to American and Brigham. (ECF No. 114.) The court granted a consent motion for extension of time for the defendants to file a reply to the plaintiff's opposition to summary judgment, but no reply was filed.

## ANALYSIS

### I.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is

4

genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**II.    Discussion**

Disposition of this motion distills to a simple question: Who owns and/or controls the clinic where Ms. O'Connell attempted to obtain an abortion in Frederick, Maryland? The defendants argue that American and Dr. Brigham had, at most, a contractual relationship with Associates to provide independent contractor physicians. (ECF No. 109-1 at p. 9.) They assert that "at all times relevant herein, American was not conducting business in the State of Maryland nor providing abortion services under the trade name 'American Women's Services,' that Dr. Brigham was not the owner or 'alter ego' of either Associates . . . or American Women's Services nor exerting any sort of 'domination' or 'control' over those entities or the operations and procedures of any of the four Maryland abortion clinics in question." (ECF No. 109-1 at p. 5.) Instead, they were involved with the Frederick clinic only "pursuant to an expressly defined independent contractor agreement [to provide

5

independent contractor physicians] entered into by AMA [(American)] and Associates." (ECF No. 109-1 at p. 6; ECF No. 109-1, Ex. 1, *Transcript of Stephen C. Brigham, M.D.*, at Tr. 109-110). "AMA [(American)] and Associates," the defendants insist, "were independent and distinct business entities—separately owned and operated." (ECF No. 109-1 at p. 5.)

The plaintiff, by contrast, argues that the Frederick clinic where she sought an abortion was owned and operated by Dr. Brigham and/or American, his corporation, (ECF No. 114 at p. 2), or that he exercised such substantial control over the clinic as to be responsible for its negligence. (ECF No. 114 at pp. 14-15.) There is no disputed point of law here. Both parties seem to agree that if Brigham or American owned or controlled the Frederick clinic and its employees, this case should continue to trial. By contrast, if their relationship was that of a principal and an independent contractor, and if Brigham and American have no ownership or control over the Frederick clinic, then summary judgment is proper.[3]

While the depositions of Dr. Brigham and Nancy Luke, the former CEO of Associates, support the conclusion that American and Dr. Brigham did not own or operate the Frederick clinic, (*see* ECF 109-1, Ex. 1, *Transcript of Stephen C. Brigham, M.D.*, at Tr. 70-71; 81-82; 86-87; 204 (Dr. Brigham averring that he never owned or operated Associates or AWS); ECF 97-3 (Ms. Luke stating that American did not own Associates and that Dr. Brigham did not manage

---

[3] The defendants in their motion for summary judgment recount a test for principal-independent contractor vis-a-vis a traditional employer-employee relationship. To be clear, it appears the defendants' argument here is that Dr. Brigham and American were independent contractors hired to provide Associates with independent contractor physicians. To the extent it is relevant, the Supreme Court announced in *United States v. Silk*, a six-factor test "to determine whether a worker is an employee or an independent contractor. The factors are (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business." *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006) (quoting *United States v. Silk*, 331 U.S. 704 (1947)).

Associates)),[4] the plaintiff puts forth sufficient evidence that, when construed in her favor, engenders a genuine dispute as to the defendants' ownership and/or control of the Frederick clinic. A few facts proffered by the plaintiff are particularly salient. First, the consent form that Ms. O'Connell signed ahead of the attempted abortion and her medical records from the Frederick clinic are all written on American forms or on American letterhead. (Pl.'s Resp. Opp'n Defs' Mot. Summ. J, ECF No. 114-7.) Second, the address listed on American's registration as a business entity in Maryland is the address of the Frederick clinic where Ms. O'Connell sought an abortion. (Pl's Resp. in Opp'n to Defs' Mot. for Summ. J, ECF No. 114-11.) Third, the independent contractor agreement signed by Dr. Dominy does not refer to Associates; rather, it is between American, a "Professional Corporation authorized to practice medicine and surgery in Maryland," and Dr. Dominy, and refers to "Maryland locations of the PC." (Pl's Resp. in Opp'n to Defs' Mot. for Summ. J, ECF No. 114-8.) Fourth, it appears that Dr. Brigham, through an intermediate corporation, may have owned the physical building in Frederick, MD, where the clinic at issue was housed. (Pl.'s Resp. Opp'n Defs' Mot. Summ. J, ECF No. 114-13.) Fifth, the defendants, who have the burden of proving they are entitled to a judgment as a matter of law, have provided no information about the ownership of Associates and failed to produce the principal-independent contractor agreement between American and Associates upon which they place so much importance.

These factors alone are sufficient to establish a genuine dispute of material fact as to the defendants' ownership and/or control of the Frederick clinic. Because there exists a genuine dispute of material fact about the defendants' overall relationship to the Frederick clinic,

---

[4] The defendants' cause is also buoyed slightly by the deposition of Melissa Shachnovitz, the office administrator for the four Association clinics, who said that she was paid by Associates, that she thought a different doctor was the owner, and that Dr. Brigham did not frequent the Associate locations but only "provided physicians through AMA [(American)]." (ECH 109-1, Ex. 2, *Deposition of Melissa Shachnovitz*, at Tr. 13:3 – 30:3).

summary judgment also will be denied as to any separate theory about the defendants' vicarious liability for the actions of their alleged agent, Dr. Panah, who, all agree, was hired by Dr. Brigham to serve as Medical Director of the four Associates clinics. (ECF No. 109, Ex. 1 at 208-10.)

A separate order follows.

11/19/18
Date

Catherine C. Blake
United States District Judge